DEHOOG, P. J.
*794 Claimant seeks judicial review of an order of the Workers' Compensation Board (board) denying his request for permanent total disability (PTD) benefits. Claimant argues that the board unreasonably rejected his attending physician's medical opinion that claimant is completely physically disabled on the ground that the doctor had also commented on claimant's age, his education, and job availability. According to claimant, the board's order was therefore not supported by substantial evidence. In response, respondents assert that substantial evidence supports the board's finding that claimant was not completely physically disabled. We conclude that the board's finding was not supported by substantial evidence because no reasonable person, properly viewing the record as a whole, could make that finding. We further conclude that the board failed to adequately explain its reasons for rejecting the doctor's opinion; as a result, the board's order lacked substantial reason. We therefore reverse and remand.
We take the relevant facts from the unchallenged findings of fact in the board's order and undisputed evidence in claimant's medical records. Claimant worked at a meat packing plant (respondent Hill Meat Company) as a kitchen manager, a position that involved both physical labor and supervisory duties. Respondent SAIF Corporation was the workers' compensation insurer for the plant. In April 2004, claimant sustained a compensable right shoulder injury. After recovering from the resulting surgery, claimant self-limited for a period of time before returning to full duty work. SAIF accepted a claim for "complex tear of the anterior portion of the glenoid, right shoulder" and, in November 2004, a Notice of Closure awarded claimant no permanent partial disability benefits. Claimant's aggravation rights for the 2004 injury claim expired in November 2009.
Claimant sustained another compensable right shoulder injury in July 2010, and, in December of that year, underwent surgery to treat that injury. In April 2011, Dr. Fry became claimant's attending physician. He opined at that time that it was very unlikely that claimant would ever return to his previous employment. Also in April 2011, SAIF
*795 denied several conditions as not compensably related to the 2010 injury. After an initial denial of permanent partial disability benefits, a November 2011 Order on Reconsideration modified that award to 12 percent whole person impairment for the 2010 injury. The parties later entered into a Claim Disposition Agreement in which claimant fully released all benefits arising from the 2010 injury, except medical service-related benefits.
In July 2014, SAIF voluntarily reopened and accepted claimant's Own Motion claim for a "post-aggravation rights" new or omitted medical condition (traumatic arthritis of the right shoulder) relating to claimant's 2004 injury. At that time, Fry opined that claimant was completely physically disabled due to his right shoulder and would be off work permanently. Fry opined that claimant's *378 shoulder disability was approximately 75 percent due to his 2004 injury, 15 percent to his nonwork activities, and 10 percent to his 2010 injury. In February 2015, Fry again opined that claimant was completely physically disabled by his right shoulder condition and that correction was not possible. As detailed below, Fry wrote in his chart notes that claimant could not work because of chronic pain, atrophy, and loss of range of motion.
Finally, in April 2015, claimant's attorney sent Fry a "concurrence letter" that summarized an earlier conversation between the two professionals. The letter instructed Fry that, if he "agree[d] with the contents" of the letter, he should check the appropriate box and sign the letter before returning it to the attorney. Among other matters discussed below, the letter stated that claimant's newly accepted arthritis condition rendered him permanently totally disabled. The letter also stated, "Given [claimant's] age, educational background and his injury you do not believe there are any jobs out there he could do." The letter concluded with, "You do not believe it is likely [claimant] is employable now or at anytime [sic ] in the future." Fry checked "yes" and signed the letter.
SAIF's August 2015 Own Motion Notice of Closure denied claimant PTD benefits for the "post-aggravation rights" new or omitted medical condition (traumatic arthritis *796 of his right shoulder) relating to claimant's 2004 injury claim. Claimant appealed that denial. The board affirmed the Notice of Closure, thereby upholding the denial of PTD.
We review the board's order upholding SAIF's denial of PTD benefits for errors of law and substantial evidence. Elsea v. Liberty Mutual Ins. , 277 Or. App. 475, 476, 371 P.3d 1279 (2016) ; ORS 656.298 ; ORS 183.482(7) - (8). We do not reweigh the evidence or "substitute our judgment for that of the board as to any issue of fact supported by substantial evidence." Elsea , 277 Or. App. at 483, 371 P.3d 1279 ; ORS 183.482(7). "If the board's finding is reasonable in the light of countervailing as well as supporting evidence, then the finding is supported by substantial evidence." Elsea , 277 Or. App. at 484, 371 P.3d 1279 ; ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding.").
In reviewing for substantial evidence, we review both the board's findings and its reasoning. Armstrong v. Asten-Hill Co. , 90 Or. App. 200, 206, 752 P.2d 312 (1988). That is, to be supported by substantial evidence, the board's order must indicate what findings the board made and how those findings led to the board's ultimate conclusions. Id. at 205, 752 P.2d 312.
"Permanent total disability" is defined as "the loss, including preexisting disability, of use or function of any portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation." ORS 656.206(1)(d). A claimant bears the burden of proving that he is permanently and totally disabled. Clark v. Boise Cascade Corp. , 72 Or. App. 397, 399, 695 P.2d 967 (1985). A claimant may establish PTD by proving that (1) he is completely physically disabled and thus precluded from gainful and suitable employment or (2) if he is capable of performing some work, he is nonetheless permanently disabled due to a combination of his physical condition and certain nonmedical facts, such as age, education, and mental capacity. Id. The second method of proving PTD is called the "odd-lot" doctrine. Id. A claimant may establish PTD through either method.
*797 In its order, the board considered whether claimant had established PTD under either theory. In evaluating whether claimant had established PTD by showing that he was completely physically disabled, the board wrote:
"Here, Dr. Fry took into account claimant's age and education in opining that he was totally permanently disabled. (Ex. 51A). Under such circumstances, the record does not establish that claimant is completely physically disabled."
(Emphasis in original.) The board's order lacked any further analysis as to whether claimant had shown that he was completely physically disabled. The board proceeded to analyze whether claimant had satisfied the *379 requirements of the "odd-lot" doctrine and determined that he had not. On review, claimant argues that the board's first finding-that the record does not establish that he is completely physically disabled-is not supported by substantial evidence. We agree.
Two exhibits in the record are particularly relevant to our conclusion that the board's order lacks legally sufficient support. Both exhibits were cited by the board in its findings of fact. The first exhibit contains the chart notes from Fry's February 2015 examination of claimant, in which Fry wrote:
"I think there is little doubt that he is completely disabled by the shoulder injury. It is his right side which is his dominant side. The shoulder is 100% disabled and I do not believe there is any correction possible at this time. * * * Because of the chronic pain, atrophy, loss of range of motion, he has a distracting pain making other work impossible and he has tried job retraining for a more sedentary job and this has failed. I believe the patient is completely disabled."
In concluding that the record did not establish that claimant is completely physically disabled, the board relied on a second exhibit, the April 2015 concurrence letter. As discussed above, that letter summarized a conversation between claimant's attorney and Fry, who had checked "Yes" in the letter, indicating that he "d[id] not believe it is likely [claimant] is employable now or at anytime [sic ] in the future." The concurrence letter summarized the conversation as follows:
*798 "You would agree [claimant's] newly accepted arthritis condition renders him totally permanently disabled. When [claimant] was first treating for his shoulder condition he made every attempt possible to return to work, however, his condition has continued to deteriorate and he is not able to seek gainful employment. Seeking gainful employment would be futile at this point. He has a regular narcotic prescription that prevents him from concentrating on-the-job. He also can not sit at a desk in a manner that would be consistent with his work restrictions because of the increased pain and pressure from his arthritic condition. Given his age, educational background and his injury you do not believe there are any jobs out there he could do.
"You have not released him to work and even if he was released to work he would have good days and bad days and would be unable to regularly maintain an employment schedule to enable him to work. You are his attending physician and have been his attending physician for a substantial period of time. [Claimant has] tried to return to school to try and reduce his physical capacities to find employment. However, his continued progression of his arthritic condition has rendered a search futile and impossible to continue."
(Emphasis added.) In concluding that claimant had not proved PTD, the board focused exclusively on the italicized statement in the letter.
Again, in finding that claimant had not proved PTD due to complete physical disability, the board found:
"Here, Dr. Fry took into account claimant's age and education in opining that he was totally permanently disabled. [Citing the concurrence letter.] Under such circumstances, the record does not establish that claimant is completely physically disabled."
(Emphasis in original.)
We conclude that the board erroneously limited its focus and rationale to Fry's isolated statement in one of multiple exhibits in the record addressing claimant's disability; as a result, the board's order is not supported by substantial evidence. That is, no reasonable person, viewing the record as a whole , could find that Fry's opinion that claimant was *799 completely physically disabled was dependent upon his observations regarding claimant's age and education.
As noted, the board's entire explanation for rejecting claimant's contention that he was completely physically disabled was encompassed in a single sentence: "Here, Dr. Fry took into account claimant's age and education in opining that he was totally permanently disabled." In context, however, Fry's discussion of claimant's age and education-itself a single sentence-cannot reasonably *380 be read as driving his conclusion that claimant is completely physically disabled. The concurrence letter states that claimant "is not able to seek gainful employment," i.e. , he is completely physically disabled. See Clark , 72 Or. App. at 399, 695 P.2d 967 (complete physical disability means the person cannot seek gainful and suitable employment). Fry offers a number of reasons for that opinion. Claimant's shoulder condition continues to deteriorate. His related narcotics prescription "prevents him from concentrating" at work. The pain and pressure caused by claimant's arthritic condition prevents him from performing even desk work. As a result, Fry explained, claimant "would be unable to regularly maintain an employment schedule to enable him to work." Viewed in that context, Fry's agreement that, given claimant's "age, educational background and his injury, you do not believe there are any jobs out there he could do," appears to be surplusage. That is, in light of Fry's opinion that claimant's condition precluded him from seeking any gainful work-whether physical or sedentary-it appears immaterial that his age and education might also limit the types of work that he might otherwise have sought. At a minimum, the board should have considered the balance of the concurrence letter before interpreting Fry's opinion as it did.
Moreover, even if the concurrence letter, read as a whole, could be viewed as attributing claimant's inability to seek gainful employment to the combination of his condition and his age and education, it was not the only evidence before the board. There also was the entry in Fry's February 2015 chart notes, in which he repeatedly stated that claimant "is completely disabled." Like the concurrence letter, that exhibit notes, among other things, that claimant has "distracting pain making other work impossible[.]" And, although Fry's chart notes also reference a nonmedical matter-stating that claimant had attempted to train "for a more sedentary job" but had failed-the concurrence letter makes it clear that claimant's condition prevents him from doing sedentary work. As a result, either in isolation or in conjunction with the April 2015 concurrence letter, the February 2015 chart notes cannot be viewed as tying claimant's inability to work to matters other than his physical condition.
In focusing on the isolated statement in the concurrence letter, the board erred in two ways. First, by giving that statement the controlling weight that it did, the board suggests that it considered only that statement, rather than considering it in the context of the record as a whole. Second, if it considered the other evidence, including Fry's seemingly unqualified opinion in claimant's chart notes that he was completely disabled, the board failed to offer any explanation for rejecting that opinion. See Hunter v. SAIF Corp. , 246 Or. App. 755, 765, 268 P.3d 660 (2011) ("The board can reject an expert's medical opinion as unpersuasive, but it must explain its reasons for doing so."); Port of Portland OCIP v. Cierniak , 207 Or. App. 571, 583-84, 142 P.3d 542 (2006) (citing SAIF v. January , 166 Or. App. 620, 625-26, 998 P.2d 1286 (2000), for the proposition that, where a doctor's earlier opinion is inconsistent with his or her subsequent opinion, the board must address the inconsistencies in the evidence in order for us to evaluate whether the board's finding is supported by substantial evidence). Therefore, the board's finding was not supported by substantial evidence or reason.
In arguing otherwise, respondents contend that substantial evidence exists in the record-other than the statement of Fry that the board explicitly relied on-that supports the board's finding that Fry improperly considered matters beyond physical disability caused by claimant's 2004 injury. For example, respondents observe that Fry's chart notes suggest that he considered both claimant's 2004 and 2010 injuries, that claimant returned to work following his 2004 injury (suggesting, in SAIF's view, that claimant's inability to work cannot be due to the 2004 injury), and that claimant underwent a work capacity evaluation "to gather objective data regarding his physical ability in light of his traumatic arthritis." However, whether that other evidence might have supported the board's ultimate conclusion that claimant had not established complete physical disability has no bearing here. In rejecting Fry's opinion *381 on that point, the board made no reference to that evidence, and its resulting order fails to demonstrate that the board engaged in any of the reasoning that respondents now offer on appeal.
In sum, the board's order was not supported by substantial evidence. Rather than view the record as a whole, the board unreasonably focused on an isolated statement in a single exhibit. And in focusing on that statement without acknowledging the other evidence in the record, including Fry's February 2015 opinion that claimant is completely physically disabled, the board erred by failing to adequately explain why it rejected that other opinion. As a result, the board's order also was not supported by substantial reason. Accordingly, we reverse and remand the order to the board. ORS 183.482(8)(c) (the court "shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record").
Reversed and remanded.